Charles W. Coe ABA#7804002
Law Office of Charles W. Coe
810 W 2nd Avenue
Anchorage, Alaska 99507
Telephone: 907-276-6173
Facsimile: 907-279-1884
Email: charlielaw@gci.net

Attorney for R.R.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| R.R., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA and FEDERAL BUREAU OF PRISIONS, <br><br> Defendants. | Case No. 3:23-cv-00175-HRH <br><br> **COMPLAINT FOR DAMAGES** <br><br> **FEDERAL TORT CLAIMS ACT** |

COMES NOW, the plaintiff, R.R., by and through her attorney, CHARLES W. COE, who hereby states and alleges the following as her causes of action for this complaint.

1. This court has jurisdiction over this case and causes of action pursuant to 28 U.S.C. §1346(b) and §2671 as will as the various sections of the Federal Tort Claims Act. Venue is proper under 28 U.S.C. §1402(b).

2. The plaintiff is a resident of the District of Alaska and some of the acts and omissions occurred when she was in a halfway house in Alaska. Additionally, incidents, acts, and omissions occurred when she was incarcerated at the Federal Correctional Institute at Dublin California (hereinafter FCI Dublin) pursuant to a criminal sentence issued by this court.

3. Plaintiff filed a claim with the Federal Bureau of Prisons (hereinafter FBOP) under the FTCA for a sum certain dated August 19, 2022, which was received by the FBOP on August 24, 2022. This claim was timely amended in the amount by an amended claim dated December 15, 2022, which was acknowledged and received on January 27, 2022, by the FBOP western regional office. The time to adjudicate this claim as well as the amended claim has expired, and suit is now permitted under 28 U.S.C. §2675. This claim has been substantiated with documents and evidence as required by 28 U.S.C. §1346(b) and §2671-2680 on several occasions.

4. A separate case arising from facts discussed in this complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388(1971) *Bivens* was filed against Ray J. Garcia by the plaintiff based on his individual actions by the plaintiff R.R., on June 29, 2023, Case No. 3:23-cv-00140-SLG.

5. Plaintiff, R.R., who is going by her initials in this action for privacy and safety purposes, asserts this claim based on the outrageous sexual abuse, sexual statements, sexual harassment, and sexual contact she endured by FBOP officer, Ray J. Garcia and other officers supervising him, at the BOP all female federal prison camp at FCI Dublin, California. The Dublin, California Federal Corrections Institute ("FCI Dublin") is a low security federal correctional institution with an adjacent minimum security satellite camp for female offenders. Ray J. Garcia made sexual statements and started a grooming process of the plaintiff in 2019, which continued into 2020. The physical, verbal, and contact abuse occurred during July and August 2020 at FCI Dublin and continued after September 23, 2020, when plaintiff was in a half-way house in Anchorage, Alaska. The plaintiff is a resident of Alaska. Ray J. Garcia was the assistant warden at FCI Dublin in charge of the prison on behalf of the FBOP at that time.

6. During all times relevant to this complaint, Warden Ray J. Garcia, and other BOP employees fostered a culture of rampant sexual abuse of prisoners widely referred to as "the rape club". The culture, custom and policies of rape, sexual abuse, sexual contact, and sexual harassment at FCI-Dublin and FCP Dublin, were enabled by the highest levels of staff, including but not limited to Warden Ray Garcia, who not only condoned it, but participated in it.

7. Plaintiff, R.R., was an inmate at the Bureau of Prison's all female Federal Prison Camp in Dublin, California. R.R. is no longer incarcerated and no longer under probation in the federal system.

8. Plaintiff was released from the halfway house on January 16, 2021, in Alaska and is no longer under probation. In November 2016 she was convicted in Alaska and sent to FCI Dublin to serve her sentence, since Alaska has no BOP prison for female inmates. She was sent to FCI Dublin in December 2016. She remained at FCI Dublin until September 23, 2020, when she was transferred to a halfway house under FBOP control in Anchorage to complete her sentence. At all times she was subject to the supervision and rules of FBOP, which included supervision and control by Ray J. Garcia and other administrators assisting Garcia.

9. Defendant, United States of America (hereinafter U.S.A.) through the FBOP employed Garcia and other administrators working with him to supervise R.R., while she was in their care, custody, and control at all times relevant to this complaint. He was employed by the BOP at first as the Associated Warden in charge of operating the FCI of Dublin and the adjacent prison camp FPC Dublin. Garcia also administered the Prison Rape Elimination Act (PREA) program, designed to eliminate the sexual abuse and harassment of inmates in federal prison including FCI Dublin. He then became Warden of FCI Dublin and FPC Dublin where sexual abuse, sexual harassment, and sexual contact with the

plaintiff occurred. As the Associate Warden and Warden of FCI Dublin, Garcia, as an employee of the FBOP was in charge of ensuring that female inmates were not abused by male guards and was specifically in charge of his staff training and discipline to prevent sexual abuse, sexual contact, sexual harassment, and violation of R.R.'s constitutional rights. As Warden at the BOP facility, Garcia was in a position of power with respect to all female inmates including R.R., where he specifically sexually abused her, had sexual contact with her, kissed her, violated her constitutional rights, made derogatory sexual comments to her, took sexually related photographs of her using BOP devices, threatened to have her parole/probation revoked, and intimidated her into performing sexual acts and producing photographs of her. Garcia was charged with committing sexual abuse of her as a prisoner while under his supervision and convicted in December, 2022. He was sentenced by the federal court in 2023 at which time he admitted to the sexual abuse committed against R.R., and other female inmates under his control. He was sentenced to 70 months of incarceration and waived his rights to appeal.

10. As recognized by federal law, there is no scenario in which an inmate can give consent to sexual contact with a correctional officer, such as that occurred with R.R. In 2003, Congress unanimously enacted the PREA and declared "the prevention of prison rape a top priority in each prison system". 34 U.S.C. §3031(2). Despite the BOP's responsibility to enforce a "zero-tolerance

standard for the incidence of prison rape in prisons in the United States" 34 U.S.C. §3031(1), the culture of sexual abuse at FCI and FCP Dublin was so pervasive that the facility has been referred to as the "rape club."  BOP, FCI-Dublin, and FCP Dublin failed to implement necessary and feasible protections for prisoners, including a viable mechanism for reporting sexual abuse, continuous direct sight and sound supervision, and appropriate training, supervision, and discipline of the employees, as well as administrators such as Garcia.  These Dublin officers and administrators were responsible for preventing and remedying sexual abuse and were in fact serial sexual predators and abusers.  They were aware of Garcia's and other officers' contact with R.R., and other inmates but failed to stop and/or prevent his actions.

11.     Defendants' employee, Ray Garcia, was in charge of FCI Dublin and FCP Dublin first as Associate Warden with the responsibility of administering the PREA program, and then as Warden of FCI Dublin and FCP Dublin during the time plaintiff was serving her sentence at FCI Dublin and FCP Dublin.  Garcia, and other BOP officers were members of the FCI Dublin and FCP Dublin "rape club", which is what the BOP officers who sexually assaulted and sexually harassed the female inmates at Dublin were called.  Garcia himself, and the Dublin leadership, and co-workers tolerated and encouraged sexual harassment and sexual abuse by permitting predatory employees to harass, rape, and abuse inmates

without consequence. Although the first complaints of sexual abuse surfaced in 2017, Garcia and the leadership of FCI Dublin and FCP Dublin permitted abuse conditions to continue, thereby creatin customs and practices of sexual harassment, abuse, and rape by prison officials that included those at the highest levels of command, such as Garcia. It did not matter what the written policies were because embedded in FCI-Dublin and FCP Dublin were these sexual abuse and sexual harassment practices that became the accepted conduct and norm within the prison. Prisoners who reported sexual abuse were ignored, threatened, or retaliated against with solitary confinement or loss of favorable job assignments. Prison officials expressly advised one victim that they would take no action in response to her report because it was a "he-said-she-said" scenario. The policy, custom and practices that directly violated PREA and were implemented by Garcia where he knew other guards were sexually abusing inmates gave implicit permission to officers to abuse and harass female inmates including the plaintiff. Garcia's involvement in the "rape club" and his personal knowledge and approval of the BOP officers' sexual abuse of female inmates, and his role as supervisor and sexual abuser of R.R., as well as his supervisors and co-workers gives rise to this complaint and the causes of action set out hereafter.

   12. Plaintiff, R.R., was originally designated to serve her sentence at FPC Dublin and began service of her sentence there in December 2016, where she

was sexually abused, sexually harassed, and where sexual contact occurred by Garcia. Plaintiff served her time at Dublin until September 23, 2020, when she was transferred to a half-way house in Alaska. The sexual abuse, harassment, and threats by Garcia continued after she entered the halfway house in Alaska. It started with a grooming process involving sexually derogatory communications in 2019 and continued into 2020 when Garcia had sexual abuse and contact with her at FCI Dublin. It also continued into October 2020 when Garcia would contact plaintiff via phone and take photographs of her unclothed without her permission when she was incarcerated at the halfway house.

13. In the summer of 2019, Garcia began showing an interest in R.R., and approached her at various times to make sexually derogatory and inappropriate comments. In July, August, and September at various times he sexually abused her, kissed her, and had sexual contact with her on multiple occasions. This sexual conduct included grabbing/fondling her breasts and buttocks as well as specifically placing his penis against her vagina. Garcia, during this time while at the FCI facility, escalated his sexual contact behavior until she was transferred to a half-way house at the end of September 2020. The staff was aware of Garcia's inappropriate behavior with R.R., and other inmates and failed to stop it or report it to the chain of command.

14. While at the halfway house, Garcia continued to contact the plaintiff via phone and had her participate in face time in which he had her take off her clothes and expose her body. Garcia would also expose his genitals to R.R., in these calls.

15. Garcia, unbeknownst to the plaintiff, seized sexually based images of her while she undressed and kept them on his FBOP phone or computer for his and others to use without her knowledge or permission.

16. Garcia abused his authority and threatened to have plaintiff's probation and/or time at the half-way house revoked, if she did not participate in his sexual harassment and abusive activities, which he knew was inappropriate.

17. According to the FBI and the law enforcement investigation of this case Garcia had in excess of 90 or more screen shots/photographs of the plaintiff naked or disrobed. She was unaware that they were taken in July, August, September or October of 2020 and kept in Garcia's possession for his own gratification or for other members of his staff.

18. All of these encounters were offensive and unwelcome. R.R. was very uncomfortable with the coercive dynamic between them and had little choice to stop due to her incarceration status and Garcia's status with the FBOP. Despite her significant discomfort, she felt powerless to report him within the FBOP system. R.R. was aware that Garcia had disciplinary control over her, as well as

access to highly confidential information in her prisoner file based on his status as an employee of the defendant. Garcia knew she lived in Alaska, that she has a developmentally disabled child, and knew that she was emotionally vulnerable, due to her past abuse and due to her fear of having her probation revoked. When these acts occurred, she had almost completed her sentence. She was concerned that she would lose her good time credits, face disciplinary retaliation for accusing him of harassment and sexual abuse. In fact, even though he was eventually criminally indicted for his acts against her, her family continued to receive inappropriate emails about her into 2022 believed to be from employees of the defendant.

19. R.R. was also deterred from reporting by the sexually abusive and harassing culture at FCI Dublin and FPC Dublin, where the defendant, Garcia, ran the rape reporting program and where Dublin administrators tolerated and encouraged sexual harassment and sexual abuse by permitting predatory employees to harass, rape, and abuse inmates without consequence. At the time of these events, the facility was supervised by defendant Garcia who implemented an unwritten policy, custom and practice of sexually harassing, abusing, and even raping female inmates. Indeed, to this date, there have been several BOP officials and employees who have been charged or disciplined by the U.S. Department of Justice for their inappropriate conduct at Dublin, including Warden Garcia who

was convicted of sexual acts involving R.R. Garcia, as an employee of the defendants, was directly responsible for the sexual abuse, sexual contact, sexual harassment, and violation of rights of the plaintiff.

20. It is illegal and a crime for any prison staff to have consensual or non-consensual sexual contact with any prisoner. Garcia and his staff were well aware of the law, and despite their knowledge he was enabled by the "rape club" and the customs and policies of FCI Dublin and FCP Dublin. Garcia chose to engage in illegal sexual contact with R.R. He also searched and illegally seized her property by taking photographs of her undressed without her permission.

21. In 2003, Congress enacted the Prison Rape Elimination Act (PREA) and declared "the prevention of prison rape a top priority in each prison system," 34 U.S.C. §3031(2). Despite the BOP's responsibility to enforce a "zero-tolerance standard for the incidence of prison rape in prisons in the United States" 34 U.S.C. §3031(1), the culture of sexual abuse at FCI Dublin and FCP Dublin was so pervasive that the facility has been referred to as the "rape club." BOP and FCI-Dublin and FCP Dublin failed to implement necessary and feasible protections for prisoners as required by PREA, which was supervised by Garcia, including a viable mechanism for reporting sexual abuse, continuous direct sight and sound supervision, and appropriate training, supervision, and discipline, and specifically, in enacting an unwritten policy, custom and practice or rampant sexual abuse and

harassment by guards and their supervisor when the defendant had the power and obligation to prevent it. The very officers, including Garcia who were responsible for preventing and remedying sexual abuse, were themselves serial sexual predators.

**Damages**

22. Plaintiff was physically, mentally, and emotionally injured as a direct and proximate result of defendant's actions and entitled to non-economic damages, which include pain and suffering, loss of enjoyment of life, mental and emotional distress, grief, inconvenience, stress, and humiliation.

23. Plaintiff is entitled to recover damages for the pain and suffering and mental and physical trauma she endured as a result of her rights being violated, her body being violated, her mental faculties being violated, and being harassed. She is also entitled to medical care, costs, lost income, impairment of her body/ mental health, and physical/mental problems related to what has occurred.

**Claims for Relief**

<u>Negligence, Negligent Supervision, and Negligence Per Se</u>

24. Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of Garcia, his supervisors, and co-workers working at FCI Dublin in their capacity as employees of the BOP acting within the scope of their employment with the United States, and the FBOP.

R.R. V. U.S.A ET AL
CASE NO. _____
COMPLAINT FOR DAMAGES FEDERAL TORT CLAIMS ACT

Page 12 of 16

Case 3:23-cv-00175-HRH   Document 1   Filed 08/01/23   Page 12 of 16

25. At all material times, plaintiff was an inmate in the custody of the FBOP, a federal agency of the United States in possession and control of FCI Dublin or in a halfway house in Alaska controlled by the U.S.A./FBOP.

26. **Duty**. Garcia and other employees had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy to protect inmates such as R.R., on behalf of the United States from foreseeable harm including, but not limited to, harm from sexual abuse/sexual contact, sexual harassment, and threats of officers.

27. Alternatively, Garcia and other employees had a general duty of care to plaintiff.

28. Garcia's inappropriate acts with the plaintiff was reasonably foreseeable to FBOP employees, including his supervisors, and a violation of their duties of care owed to R.R.

**Breach of Duty – Inadequate Supervision**

29. Garcia and other employees failed to supervise and operate FCI Dublin in a manner that would have prevented the acts and omissions owed to R.R., causing her damages set forth in this complaint at paragraphs 22 and 23.

30. Garcia and other employees of the defendants did not take reasonable, available measures to abate the risk of sexual abuse, sexual contact, and sexual harassment to R.R., and to guarantee her safety, even though reasonable

administrators and co-workers would have complied with PREA regulations and FBOP regulations regarding proper prison operations, including adequately monitoring Garcia and correctional officer assignments as well as responding to prisoner complaints about employees at FCI Dublin.

31. Sexual abuse and sexual harassment of R.R. occurred as the direct and proximate result of supervisory negligence of employees of the defendants. Defendant, through its employees, were negligent, negligent per se, and/or negligent in their supervision of Garcia and/or their employees at FCI Dublin causing R.R., damages set forth in this complaint.

32. Plaintiff suffered a physical and mental violation of her body, a violation of her liberty interest in being free from sexual abuse/harassment, injuries from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future as a direct and/or proximate result of actions and omissions of defendants' employees and Garcia.

33. Plaintiff seeks the following relief for her injures set out in paragraphs 22 and 23 of this complaint.

**Negligent Infliction of Emotional Distress**

34. Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

35. Garcia's and defendants' other employees' acts and omissions caused plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety because of being repeatedly sexually abused, sexually contacted, and harassed.

36. Plaintiff's emotional reaction was not an abnormal response to her sexual abuse and harassment. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

37. By reason of the United States' negligence infliction of emotional distress, through their employees, plaintiff has suffered emotional distress and will continue to suffer mental and emotional anxiety and distress.

38. Plaintiff seeks damages set out in this complaint for the negligent infliction of emotional distress.

**Violation of Plaintiff's Civil Rights**

39. Plaintiff repeats and incorporates by reference every fact and allegation set forth in the preceding paragraphs of this complaint.

40. Defendants' acts and omissions through Garcia, their employees, and administrators for the FBOP violated R.R.'s constitutional rights under the Fourth,

Fifth, Eighth, and 14th Amendments of the U.S. Constitution as well as her rights under regulations of the FBOP.

41. These violations caused her damages as set out in paragraphs 22 and 23 of this complaint.

42. WHEREFORE, plaintiff, R.R., prays for judgment against the defendants as follows:

1. Compensatory damages in a sum to be proven at trial within the amount claimed in the administrative claims process;

2. Costs and attorney fees as allowed under the Federal Tort Claims Act; and

3. For such other relief as this court deems just and equitable.

DATED this 1st day of August 2023.

By: /s/Charles W. Coe
Counsel for Plaintiff
810 W 2nd Avenue
Anchorage, Alaska 99501
Phone: (907) 276-6173
charlielaw@gci.net
ABA#7804002